864 So.2d 836 (2003)
STATE of Louisiana
v.
William BLACK.
No. 03-KA-911.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*837 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Thomas S. Block, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, LA, for Defendant-Appellant.
*838 Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, William Black, with distribution of oxycodone, in violation of LSA-R.S. 40:967(A). The matter proceeded to trial before a twelve person jury, which found defendant guilty as charged. Defendant thereafter filed a motion for new trial, which the trial judge denied. After defendant waived delays, the trial judge sentenced him to imprisonment at hard labor for twenty years.
The state filed a multiple offender bill of information alleging that defendant was a fourth felony offender pursuant to LSA-R.S. 15:529.1. After being advised of his rights, defendant admitted to the allegations contained in the multiple bill. The trial judge vacated the original sentence and imposed an enhanced sentence of twenty years at hard labor without benefit of probation or suspension. Defendant now appeals.

FACTS
On May 16, 2001, the Jefferson Parish Sheriff's Office received information from a confidential informant regarding defendant's residence on 5th Street in Gretna. Based on that information, Sergeant Renton arranged for undercover Agent Casey Moore to purchase ten or more oxycodone pills the next day from defendant, a white male, who lived at the residence.
On May 17, 2001, Sergeant Renton called the confidential informant to make sure that the pills were still at the residence. Sergeant Renton also provided Agent Moore with eight $20 bills in case she was able to purchase more than twenty pills. At approximately 2:00 p.m., Agent Moore, accompanied by the confidential informant, went to defendant's residence. When Agent Moore knocked on the door, defendant opened the door and invited her into the house. Agent Moore separated from the confidential informant after entering the house. Defendant asked Agent Moore "how many [she] wanted." When Agent Moore responded, "20 pills," defendant replied that "all he had was ten left, that he had just gotten rid of ten." Defendant then asked how "did [she] use them," and Agent Moore replied that she "shot them up," meaning that she injected the pills with a syringe after melting them. After this exchange, Agent Moore felt that she had gained defendant's confidence.
Agent Moore heard someone call out to defendant, which surprised her because she had expected defendant to be alone in the house. She looked toward the direction of the voice and saw a black male, later identified as Calvin Ward, sitting on a bed in the next room smoking crack cocaine in a glass pipe. Defendant asked Agent Moore if she knew where the nearest drug store was located. Agent Moore believed defendant wanted her to obtain some syringes at the drug store and "just stay there." However, Agent Moore told defendant that she had to leave because her boyfriend was waiting on her. Thereafter, defendant pointed to Calvin Ward and said, "He'll deal with you. I'm going to take a hit off that crack pipe."
When defendant entered the bedroom, Ward handed the glass pipe to him. Ward exited the bedroom and defendant shut the door. Ward introduced himself to Agent Moore, asked how many she wanted, and Agent Moore told him that she wanted twenty pills. Ward explained that he only had ten because "they had just got rid of *839 ten for the crack cocaine they were smoking." Agent Moore told him that she could easily access crack cocaine and asked if he would be willing to trade pills for crack. Ward responded affirmatively, returned to the bedroom and shut the door.
A few seconds later, Ward came out of the bedroom with ten pills wrapped in newspaper that Agent Moore exchanged for $80. Following a brief conversation in which Ward provided Agent Moore his telephone number for future contact, Agent Moore left. At a prearranged location, Agent Moore gave the pills and remaining money to Agent Heggelund. According to the state's expert chemist, all of the pills were similar in appearance and he tested only one of the pills, which was positive for oxycodone. Sergeant Renton obtained arrest warrants for defendant and Ward, who was at large at the time of trial.
Mary Maggiore, defendant's mother, testified on behalf of the defense. Ms. Maggiore said that she took defendant to the hospital on May 17, 2001, for out-patient surgery. However, she acknowledged that he returned home sometime after lunch.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him. Specifically, defendant asserts that there was no evidence that he orchestrated or facilitated the drug sale between Agent Moore and Calvin Ward, and thus, the state failed to prove that he acted as a principal to the drug transaction.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Distribution of oxycodone is defined in LSA-R.S. 40:967(A)(1), which provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II. Oxycodone is classified in Schedule II as a controlled substance. LSA-R.S. 40:964(A)(1)(o). The term "distribute" is defined as "to deliver a controlled dangerous substance ... by physical delivery." LSA-R.S. 40:961(14). Delivery is defined as the "transfer of a controlled dangerous substance whether or not there exists an agency relationship." Delivery has also been jurisprudentially defined as transferring possession and control. State v. Celestine, 95-1393 (La.1/26/96), 671 So.2d 896, 897.
A defendant may be guilty of distribution as a principal if he "aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance...." State v. Bartley, 00-1370 (La. App. 5 Cir. 2/14/01), 782 So.2d 29, 32-33, writ denied, 01-717 (La.2/22/02), 809 So.2d 981.
To support a defendant's conviction as a principal, the state must show that the defendant had the requisite mental state for the crime. State v. Saylor, 01-451 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, 941, writ denied, 01-3406 (La.10/4/02), 826 So.2d 1122. Distribution of a controlled dangerous substance only requires general intent. State v. Banks, 307 So.2d 594, 596-597 (La.1975); State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 631. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that *840 the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2).
In the present case, although defendant did not hand the pills to Agent Moore and Agent Moore did not hand the money to defendant, Agent Moore's testimony established that the defendant arranged the transaction with Ward and procured Ward to sell the pills to her. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Simmons, 03-20 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1255. By returning the guilty verdict, the jury obviously believed Agent Moore's testimony. After reviewing the record, we find that rational jurors, viewing the evidence in the light most favorable to the prosecution, could have concluded beyond a reasonable doubt that defendant was a principal to distribution of oxycodone. Based on the foregoing discussion, this assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant contends that the trial court erred in denying his motion for new trial. Defendant asserts that the motion for new trial should have been granted because the trial court improperly allowed evidence of defendant's prior drug problem and also improperly excluded the police report as evidence. For the reasons which follow, we find that the trial court did not abuse its discretion in denying defendant's motion for new trial.
Pursuant to LSA-C.Cr.P. art. 851, a motion for new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Badeaux, 01-618 (La.App. 5 Cir. 11/27/01), 802 So.2d 905, 908.
In the motion for new trial, defendant urged that the trial judge should have granted his motion for mistrial because inadmissible other crimes evidence was introduced during the prosecutor's cross-examination of his mother. When the prosecutor asked defendant's mother if defendant "has a drug problem smoking crack," she responded, "I know he had." Defendant objected and moved for a mistrial, which the trial judge denied. Subsequently, the prosecutor revisited the subject when he stated, "Now, ma'am, you said that you are aware that your son had a problem with smoking crack cocaine. Is that correct?" Ms. Maggiore replied, "He had, yes." The defense objected again, pointed out there was no notice of defendant's past drug use at the pre-trial Prieur hearing, and reurged the mistrial motion.[1] The state argued that the testimony was relevant to the credibility of Agent Moore, who had testified about the defendant's crack cocaine use at the house. The trial court agreed with the state and denied the motion for mistrial. The trial court reaffirmed its ruling when denying the motion for new trial.
LSA-C.Cr.P. art. 770 provides, in pertinent part:

*841 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a "court official." However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the state and triggers the rule mandating a mistrial. State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, 866, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783.
A "[m]istrial is a drastic remedy and is warranted under La.Code Crim. Proc. art. 770 only when a remark or comment referencing an accused's commission of other crimes results in prejudice to his substantial rights sufficient to undermine the fairness of trial." State v. Broaden, 99-2124 (La.2/21/01), 780 So.2d 349, 360, fn. 5, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). The determination of prejudice and the ruling on a mistrial is within the sound discretion of the trial court. Id. at 361.
An exception to Article 770's rule requiring a mistrial is made if the evidence is substantially relevant to some purpose other than to show that the defendant is a bad person and, therefore, more likely to have committed the crime. The trial judge must balance the pertinent factors to determine whether the probative value of the evidence is outweighed by its prejudicial effect. State v. Kirkpatrick, 443 So.2d 546, 556 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).
In the present case, the complained of evidence is attributable to the state, since the prosecutor twice elicited the same response from the witness. However, we find that the references to defendant's past crack cocaine use were independently relevant to negate defendant's theory that he was an innocent bystander. Moreover, even if the evidence of defendant's past drug use should not have been introduced, we find any error in its admission to be harmless. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 785, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Considering that there was evidence of defendant's present cocaine use and considering the evidence against the defendant, we find that the guilty verdict was surely unattributable to any error in the brief references to defendant's past crack cocaine use.
Defendant also contends that the trial judge erred in denying the motion for new trial on the basis that the police report was improperly excluded. However, defendant did not urge this claim in the motion for new trial or at the hearing on the motion. Since the issue was not before the trial judge, the judge could not have abused his discretion in denying the motion for new trial on this basis. However, since defendant strenuously objected at trial to the exclusion of the police report, we will consider the merits of this argument.
At trial, defendant asserted that the police report was admissible because it showed that Agent Moore and Sergeant Renton had embellished the facts to implicate the defendant. The state argued the document was hearsay, and the trial judge ruled the police report was inadmissible.
*842 According to LSA-C.E. art. 803(8)(b)(i), investigative police reports are inadmissible hearsay. State v. Berkeley, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 653, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549. Therefore, the trial judge did not err in excluding the report. Moreover, the trial court gave defense counsel wide latitude in questioning both Sergeant Renton and Agent Moore. Sergeant Renton testified that his report did not contain many of the statements Agent Moore said the defendant had made. Additionally, Sergeant Renton admitted that his report contained many omissions. Sergeant Renton explained that he does not include every detail of an occurrence in a police report because it would be physically impossible due to his workload. The trial court even permitted the defense to read portions of the police report, so that the jury heard the actual verbiage of some of the report. Accordingly, we find that the trial judge did not err in excluding the police report at trial.
On appeal, defendant also asserts that the trial court erred by refusing to continue or to stay the trial after granting the "State's Notice of Intent" so that he could apply for supervisory writs to this court. Before trial, the district court held a hearing on the state's notice of intent to introduce other crimes evidence, specifically the defendant's statements and actions at the time of the incident regarding crack cocaine. Although defendant noticed his intent to apply for writs, neither the record nor this court's computer system reveals that defendant filed a writ.
The defendant did not include this claim in the motion for new trial. Although he contemporaneously objected to the court's ruling, the defendant does not on appeal, specify how he was prejudiced by the lack of a stay or continuance, nor does he cite any legal authority in support of his position.
According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Inzina, 31,439 (La.App. 2 Cir. 12/9/98), 728 So.2d 458, 469; State v. Bell, 00-1084 (La.App. 5 Cir. 2/28/01), 781 So.2d 843, 848, writ denied, 01-0776 (La.4/26/02), 813 So.2d 1098.
Considering that defendant merely asserts his position, but fails to include argument or any legal citation in support of the position, we find that defendant has not briefed this position. Thus, this assertion presents nothing for review.
Considering the foregoing discussion, we find that the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors which require corrective action at this time.
For the reasons set forth herein, we hereby affirm defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La. 1973)